IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL LEE, individually and on behalf of all similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) MIDWEST TECHNICAL INSTITUTE, INC., ) ) ) Defendant. ) | Case No. 15-cv-03344 |

## ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court is the parties' Amended Joint Motion for Approval of Settlement Agreement and to Dismiss the Complaint with Prejudice (Amended Motion for Settlement Approval) (d/e 47). For the reasons set forth below, the Amended Motion for Settlement Approval is GRANTED.

### I.  BACKGROUND

On December 10, 2015, Plaintiff Michael Lee, on behalf of himself and others similarly situated, filed a Complaint and Demand for Jury Trial (d/e 1) against Defendant Midwest Technical Institute, Inc. pursuant to 29 U.S.C. § 216(b), alleging that

Defendant had failed to pay overtime wages to certain of its employees as required by the Fair Labor Standards Act (FLSA). On February 8, 2016, Defendant filed its Answer and Defenses (d/e 15) to the Complaint.

On April 7, 2016, the parties filed an Agreed Motion for Conditional Certification of Collective and for Approval of Notice to Collective (d/e 20). The proposed collective agreed to by the parties was any Admissions Representative, High School Admissions Representative, or CDL Admissions Representative employed or formerly employed by Defendant since December 10, 2012. Plaintiffs did not seek class certification under Rule 23 of the Federal Rules of Civil Procedure. U.S. Magistrate Judge Tom Schanzle-Haskins granted the agreed motion and entered an Order Approving Certification of Collective and Notice to Collective (d/e 21). The Order approved a 60-day opt-in time period for potential additional plaintiffs. Following the entry of Judge Schanzle-Haskins' Order, the parties engaged in the exchange of written discovery. Eighteen current or former employees of Defendant subsequently joined the suit, for a total of 19 Plaintiffs. In joining the suit, the additional Plaintiffs authorized Plaintiff Lee to

prosecute the action on their behalf and designated Plaintiff Lee to negotiate a resolution of their claims.  See, e.g., Consent to Join Collective Action (d/e 42-1).

The parties attended mediation on February 2, 2017, and were able to come to an agreement regarding settlement.  The parties subsequently filed their Joint Motion for Approval of Settlement Agreement and to Dismiss the Complaint with Prejudice (Motion for Settlement Approval) (d/e 43) on February 17, 2017.  On that same date, Plaintiffs' counsel e-mailed the Court a copy of the parties' Settlement Agreement, which had not been filed in the public record.  In addition to seeking the Court's approval of the Settlement Agreement, the parties requested that the Court dismiss Plaintiffs' Complaint with prejudice and retain jurisdiction over this case for the purpose of enforcing the terms of the Settlement Agreement.  Mot. for Settlement Approval, ¶ 14.

At a hearing held on February 21, 2017, Plaintiffs' counsel advised the Court on the defenses asserted by Defendant, the potential pitfalls faced by Plaintiffs in proving their claims, the uncertainty regarding Plaintiffs' potential damages, and the experience of Plaintiffs' counsel in litigating FLSA wage claims.  The

Court reserved its ruling on the parties' Motion for Settlement Approval and directed Defendant to provide justification for filing the Settlement Agreement under seal and for the Court retaining jurisdiction to enforce the terms of the Settlement Agreement following a dismissal of the Complaint with prejudice.

On February 28, 2017, Defendant filed a supplemental memorandum of law (d/e 44) in support of the Motion for Settlement Approval.  In the supplemental memorandum, Defendant argued that the confidentiality provisions in the Settlement Agreement and Defendant's concerns about future lawsuits constituted grounds to seal the Settlement Agreement.  In its Order of March 9, 2017, the Court denied the Motion for Settlement Approval, finding that, in light of the applicable Seventh Circuit case law, no sufficient basis for filing the Settlement Agreement under seal had been proffered.  The Court directed the parties to file an amended motion seeking approval of the Settlement Agreement by March 24, 2017.

On March 13, 2017, the parties filed their Amended Motion for Settlement Approval.  Attached to the motion is a copy of the parties' Settlement Agreement.  The Settlement Agreement requires

Defendant to pay to Plaintiffs a total of $117,500.00.  Half of this amount, $58,750.00, is to be allocated to back wages, while the other half is to be allocated to liquidated damages.  The Amended Motion for Settlement Approval includes a chart listing the proposed monetary recovery for each Plaintiff.  The payments to be made to the 19 Plaintiffs range from $1,000.00 to $14,703.81.  The Settlement Agreement is signed by Plaintiff Lee on behalf of all Plaintiffs.  In exchange for Defendant's payments, Plaintiffs are releasing any and all claims based on an alleged failure to pay overtime or wages and which arose during Plaintiffs' employment with Defendant up until the effective date of the Settlement Agreement.  The Settlement Agreement also requires Defendant to pay $102,500.00 to Plaintiffs' counsel for fees and costs.

     The parties ask the Court to approve the Settlement Agreement as a fair and reasonable resolution of Plaintiffs' claims.  Before analyzing the Settlement Agreement, the Court must determine whether final certification of the FLSA collective class is appropriate.

## II.  ANALYSIS

A. **Final Certification of the FLSA Collective Class Is Appropriate.**

Where the parties reach a settlement "after a court has conditionally certified a collective class, the court still must make some final class certification" before the settlement.  Burkholder v. City of Fort Wayne, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010).  In making this determination, the Court can weigh several factors, including "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural considerations." Id. at 994.

As to the first factor, Plaintiffs have been employed by Defendant in at least one of three different positions—Admissions Representative, High School Admissions Representative, and CDL Admissions Representative.  The job titles themselves suggest that the duties and responsibilities of each position are substantially similar.  Although there may be minor differences in the duties and responsibilities of the three positions, these differences are not fatal to final certification of the collective class.  See Burkholder, 750 F.

Supp. 2d at 994 (noting that where job duties are "largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees" even where "individualized differences in job responsibilities" are present).

As to the second factor—the defenses available to Defendant that appear to be individual to each Plaintiff—the Court notes that although Defendant states in its Answer and Defenses that some of the asserted defenses <u>may</u> not be applicable against certain Plaintiffs, Defendant has not gone so far as to assert individualized defenses against any particular Plaintiff.  Further, a review of Defendant's defenses indicates that many of them, including Plaintiffs' status as exempt from the overtime provisions of the FLSA and Defendant's lack of willfulness in failing to pay overtime, would apply equally to all Plaintiffs.  The fact that some defenses may not apply against certain Plaintiffs is too speculative—and potentially insignificant—to make final certification inappropriate.

In addition, although the number of Plaintiffs in this case is not incredibly large, fairness and practical considerations—the third factor—weigh in favor of treating Plaintiffs collectively.  See <u>McAfee v. Hubbard</u>, No. 14-CV-1010-NJR-RJD, 2017 WL 1479304, at *2

(S.D. Ill. Apr. 25, 2017) (holding that "fairness and procedural considerations" warranted final certification of the FLSA collective class where there were four named plaintiffs and seven additional opt-in plaintiffs). Specifically, the appropriateness of allowing Plaintiffs to pool resources for litigation to achieve a desired result is apparent given the relatively minor amounts that some Plaintiffs are receiving under the Settlement Agreement. The Court also notes that the parties, in their Settlement Agreement, "stipulate to collective certification." Settlement Agreement (d/e 47-1), ¶ 8.

For these reasons, the Court finds that Plaintiffs are similarly situated with respect to their claims against Defendant. Accordingly, the Court finds that final certification of the FLSA collective class is warranted.

**B.   The Parties' Settlement Agreement Is a Fair and Reasonable Resolution of Plaintiffs' Claims.**

In <u>Lynn's Food Stores, Inc. v. United States By & Through United States Department of Labor, Employment Standards Administration, Wage & Hour Division</u>, 679 F.2d 1350 (11th Cir. 1982), the Eleventh Circuit held that any settlement of an FLSA claim for back wages must be approved by the Department of Labor

or a district court. Although it has not explicitly adopted this requirement, the Seventh Circuit has noted that the FLSA is designed to prevent parties from contracting around minimum wage and overtime pay requirements and that a ban on private settlements of pay disputes prevents the parties from establishing sub-minimum wages. Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986). The practice in district courts within the Seventh Circuit has been to require court approval of FLSA wage claim settlements. See Salcedo v. D'Arcy Buick GMC, Inc., No. 15 C 3677, 2016 WL 7635882, at *1 n.1 (N.D. Ill. May 13, 2016) (collecting cases).

To determine the fairness of an FLSA settlement, the Court must consider "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Burkholder, 750 F. Supp. 2d at 994-95. Generally, a settlement is approved where it results from "contentious arm's-length negotiations, which were undertaken in good faith by counsel" and "serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief

after protracted and expensive litigation." Id. at 995.  When reviewing an FLSA collective action settlement, a court normally considers the following factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

Id.

In light of these factors, the terms of the parties' Settlement Agreement, and the experience of Plaintiffs' counsel in litigating FLSA wage claims, the Court concludes that the Settlement Agreement is a fair and reasonable resolution of Plaintiffs' claims and is approved.  This case involves a considerable deal of complexity and, with respect to whether Plaintiffs would prevail and the damages they could potentially recover, uncertainty.  In its Answer and Defenses, Defendant asserts numerous affirmative defenses, including defenses based on (1) Plaintiffs' failure to state a claim upon which relief could be granted, (2) the applicable statute

of limitations, (3) Plaintiffs' status as exempt from the overtime provisions of the FLSA, (4) Defendant's lack of willfulness in failing to pay overtime, and (5) and the <u>de minimis</u> doctrine.  At the hearing on February 21, 2017, Plaintiffs' counsel admitted that a finding that Plaintiffs were administrative employees exempt from the overtime provisions of the FLSA was possible.  In addition, the uncertainty in this case stems in part from the fact that Plaintiffs cannot pinpoint the exact number of hours they worked for Defendant during the relevant timeframe.

    Because Plaintiffs' counsel are both experienced in handling FLSA wage claims and knowledgeable concerning the law applicable to such claims, their acceptance of the terms of the Settlement Agreement also supports the conclusion that the Settlement Agreement is fair and reasonable.  In addition, the fact that the parties completed some written discovery makes it more likely that the parties' respective counsel could determine the true value of Plaintiffs' claims.  At the hearing held on February 21, 2017, Plaintiffs' counsel indicated that the amounts being received by Plaintiffs compared favorably to what Plaintiffs could have expected to receive after a trial and that Plaintiffs' counsel was actually able

to increase the amount to be paid to Plaintiffs due to the uncertainty regarding the hours Plaintiffs worked for Defendant. Further, the Settlement Agreement was the product of a mediation presided over by an attorney with a national law firm who is well-versed in the law applicable to FLSA wage claims.  The use of a mediator further supports the idea that the settlement is a result of a good-faith, arm's length negotiation by the parties and their counsel.  See Carter v. Anderson Merchandisers, LP, Nos. EDCV 08-0025-VAP (OPx), EDCV 09-0216-VAP (OPx), 2010 WL 144067, at *6 (C.D. Cal. May 11, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

    Furthermore, Plaintiffs' counsel informed the Court at the February 21 hearing that 17 of the 19 Plaintiffs had been advised of the proposed settlement.  No Plaintiff has objected to the terms of the Settlement Agreement.  Each Plaintiff is getting a distinct amount under the Settlement Agreement, ostensibly based on differences relating to the hours worked by each Plaintiff.  The Court notes that Plaintiff Lee is receiving less than several opt-in Plaintiffs.

For these reasons, the Court has determined that the parties' Settlement Agreement reflects a fair and reasonable compromise of disputed issues regarding Plaintiffs' claims. Accordingly, the Court approves the Settlement Agreement.

**C.    The Amount Sought by Plaintiffs' Counsel for Attorney's Fees and Costs is Reasonable.**

Prevailing plaintiffs in an FLSA case, including plaintiffs who favorably settle their cases, are entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b); Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001). The parties' Amended Motion for Settlement Approval seeks the approval of $102,500 in attorney's fees and costs for Plaintiffs' counsel. This amount is 46.6% of the total amount that Defendant has agreed to pay under the parties' Settlement Agreement. Although plaintiffs' lawyers in FLSA cases do not always receive such a high percentage of the total settlement amount, see Burkholder, 750 F. Supp. 2d at 997, the Court finds the amount to be paid to Plaintiffs' counsel under the Settlement Agreement is reasonable for several reasons.

First, at the hearing on February 21, 2017, Plaintiffs' counsel informed the Court that their work on this case generated

Page **13** of **16**

approximately $130,000 in fees. This amount has certainly increased given that Plaintiffs' counsel had to review the Order entered by the Court on March 9, 2017, and prepare and file the Amended Motion for Settlement Approval. Plaintiffs' counsel are seeking approximately 75% of the amount generated in fees, a fact that supports a finding that the amount awarded to Plaintiffs' counsel under the Settlement Agreement is reasonable. See id. (holding that the fact that the plaintiffs' attorneys were seeking only one half of the fees they generated supported the reasonableness of the fees to be recovered by the plaintiffs' counsel).

Second, as noted above, this case involves a considerable degree of complexity and uncertainty. Despite this complexity and uncertainty, Plaintiffs' counsel were able to negotiate a resolution to this case that they, as experienced FLSA litigators, believe is favorable to Plaintiffs. While Plaintiffs' counsel could have potentially obtained more for Plaintiffs by taking this case to trial, Plaintiffs could have received nothing if this case went to trial.

Third, and most important, the amount to be paid to Plaintiffs' counsel is consistent with what other attorneys have earned successfully representing plaintiffs in FLSA cases. Attorney's fees

awarded in an FLSA case "need not be proportionate to the amount of damages a plaintiff actually recovers." Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 558 (7th Cir. 1999). Based on the nature of FLSA claims, attorney's fee awards that exceed the amount recovered by the claimants are not uncommon. Heder v. City of Two Rivers, 255 F. Supp. 2d 947, 955 (E.D. Wis. 2003) (citing cases where the amounts awarded to the plaintiffs' attorneys far exceeded the amounts awarded to the plaintiffs). Plaintiffs' counsel are receiving less than Plaintiffs under the parties' Settlement Agreement. Further, Plaintiffs' counsel have advised the Court that the amount to be paid by Defendant to Plaintiffs was negotiated separately from the amount to be paid by Defendant to Plaintiffs' counsel, such that any increase in the attorney's fees and costs to be paid did not diminish Plaintiffs' recovery in any way.

For these reasons, the Court has determined that the award of $102,500 to Plaintiffs' counsel for fees and costs is fair and reasonable. Accordingly, the Court approves the award to Plaintiffs' counsel for fees and costs provided for in the parties' Settlement Agreement.

### III.  CONCLUSION

For the reasons stated, the Court GRANTS the parties' Amended Joint Motion for Approval of Settlement Agreement and to Dismiss the Complaint with Prejudice (d/e 47).  The Court APPROVES the parties' Settlement Agreement as a fair and reasonable resolution of Plaintiffs' claims.  Defendant is DIRECTED to tender $117,500 to Plaintiffs in accordance with the terms of the Settlement Agreement and the chart set forth in the Amended Motion for Settlement Approval.  Defendant is also DIRECTED to tender $102,500 to Plaintiffs' counsel in accordance with the terms of the Settlement Agreement.  The parties are further DIRECTED to comply with all other obligations imposed by the Settlement Agreement.  Plaintiffs' Complaint and Demand for Jury Trial (d/e 1) is DISMISSED WITH PREJUDICE.  THIS CASE IS CLOSED.

ENTER:  June 6, 2017.

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE